[No. B188042. Second Dist., Div. Seven. Nov. 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW LINCOLN, Defendant and Appellant.

198

COUNSEL

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ZELON, J.**—Andrew Lincoln was convicted of three counts of attempted voluntary manslaughter and three counts of assault with a firearm, with personal use and great bodily injury allegations found true by the jury. He was sentenced on all six counts and associated enhancements, with the sentences for the assault counts and their enhancements stayed pursuant to Penal Code[1] section 654. On appeal, this court reversed his attempted voluntary manslaughter convictions and remanded with directions that if the People elected not to retry Lincoln or if he was acquitted in a retrial, the court should lift the stay of execution on the assault counts and related enhancements. When the People chose not to retry Lincoln, instead of merely lifting the stay, the trial court revisited the three previously imposed assault sentences, ordering that they be served consecutively and altering the sentences on two of three counts pursuant to their designation as consecutive sentences.

Lincoln appealed, claiming that the trial court lacked jurisdiction on remand to modify his sentence and that the upper term and consecutive sentences violated his right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*). We earlier rejected Lincoln's *Blakely* argument in light of *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*), but concluded that the trial court did not have the authority on remand to sentence Lincoln consecutively. Accordingly, we remanded the matter for the reimposition of the trial court's original sentence. After a petition to the California Supreme Court, that court directed this court to vacate our prior decision and to reconsider the cause in light of decisions in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*) and *People v. Sandoval* (2007) 41 Cal.4th 825 [62 Cal.Rptr.3d 588, 161 P.3d 1146] (*Sandoval*). Pursuant to these decisions, we remand the matter for resentencing.

---

[1] All further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

After an altercation and shooting at a fast-food establishment, Lincoln was charged with three counts of attempted murder of three victims (§§ 664, 187), and with three counts of assault with a firearm (§ 245, subd. (a)(2)) against the same victims (count 4). At his first trial, Lincoln was convicted of one count of assault with a firearm. The jury also found true the allegations that Lincoln personally used a firearm (§ 12022.5, subd. (a)) and that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The jury was unable to reach a verdict on the remaining five counts; the trial court declared a mistrial as to those charges. Lincoln was sentenced on count 4 of the information and its enhancements to 17 years in state prison.

Lincoln was retried on the remaining five charges. In the second trial, he was convicted of three counts of attempted voluntary manslaughter (§§ 664, 192, subd. (a)), as a lesser included offense of attempted murder, and two counts of assault with a firearm. The trial court stayed the previously imposed sentence on count 4.[2] The court selected the lesser included offense on count 1 as the principal term and imposed the upper term sentence of five years six months for that offense. The court then imposed one-third of the midterm sentence for each of the lesser offenses corresponding to counts 2 and 3 (one year each), and designated that those sentences would run consecutively to the principal term. Additional time in prison was imposed as a result of sentence enhancements associated with counts 1, 2, and 3—a total of 15 years eight months. The court imposed but stayed upper term sentences on counts 5 and 6 and their enhancements pursuant to section 654. Lincoln's total sentence was 23 years two months.

Lincoln appealed his conviction and sentence, and in a prior unpublished opinion (*People v. Lincoln* (Mar. 30, 2005, B159414)) this court reversed his convictions for attempted voluntary manslaughter based on improper jury instructions. The disposition read, "The convictions for assault with a firearm are affirmed. The convictions for attempted voluntary manslaughter are reversed and the case remanded for further proceedings. In the event the People elect not to try the attempted voluntary manslaughter offense or, if Lincoln is retried and found not guilty of attempted voluntary manslaughter, the trial court shall lift its stay of execution of the sentence previously imposed on the assault counts."

---

[2] The trial court's stay of the previously imposed sentence on count 4 is not reflected on the abstract of judgment, which makes no reference to count 4; however, the trial court clearly stated on the record that it was imposing a stay on this count pursuant to section 654.

The People elected not to retry Lincoln for attempted voluntary manslaughter. The trial court dismissed counts 1, 2, and 3, and proceeded to resentence Lincoln on counts 4, 5, and 6. The court designated count 4 the principal term and imposed the upper term of four years, with 13 more years in enhancements related to that count (§§ 12022.5, subd. (a), 12022.7, subd. (a)). The court decided to impose sentences consecutively. Having decided to impose consecutive sentences, the trial court then, pursuant to section 1170.1, subdivision (a), adjusted Lincoln's sentence on counts 5 and 6 and their associated enhancements: The court converted the sentence on each count from an upper term sentence with upper term enhancements to a consecutive sentence of one-third the midterm—one year—plus one year four months for the section 12022.5, subdivision (a) enhancement, all served consecutively. Lincoln's total sentence was 21 years eight months.

Lincoln appealed the designation of the sentences as consecutive, and claimed that imposing the upper terms violated his Sixth Amendment rights. Under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], we rejected Lincoln's Sixth Amendment claim, but we held that the trial court lacked jurisdiction to modify the sentence by directing that the terms run consecutively on remand. On remand, we consider the issues in the context of the decisions in *Black II, supra,* 41 Cal.4th 799 and *Sandoval, supra,* 41 Cal.4th 825.

## DISCUSSION

Lincoln argues that to the extent the trial court identified factual bases for the imposition of the upper term on count 4 and the associated firearm enhancement, those facts were not found by the jury or admitted by him and therefore may not provide a basis for the imposition of the upper terms. When the trial court imposed the sentence now under review after remand from this court, it stated that it selected the high terms "for all the reasons that the court had stated at the time of the original sentencing." At the original sentencing on count 4, the trial court had cited "the circumstances of the offense; the vulnerability of the victims; and the planning that took place" as the reasons for selecting the upper term on that count. The trial court selected the upper term for the section 12022.5, subdivision (a) enhancement because of the "opportunity to deliberate and consider the course of action; the close proximity of the victims; the inherent high risk to him [the victim] . . . ."

■ "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348]

(*Apprendi*).) The Supreme Court clarified the meaning of the term "statutory maximum" in *Blakely, supra,* 542 U.S. at pages 303 and 304, as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." (Citations omitted.)

The imposition of the upper terms on the bases relied upon by the trial court violated the Sixth Amendment. In order for the trial court to find each of the aggravating factors it believed to be present, the court necessarily engaged in additional fact finding beyond the facts found true by the jury. This is exactly the fact finding that failed constitutional scrutiny in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*): "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." (*Cunningham,* 549 U.S. at p. ___ [127 S.Ct. at p. 869].) The factors cited by the trial court—the circumstances of the offense, particularly vulnerable victims, planning, the opportunity to deliberate and consider the course of action, the close proximity of the victims, and the inherent high risk to the victim—all require factual determinations beyond those necessarily encompassed by the jury verdict.

The failure to submit a sentencing factor to the jury is subject to harmless error analysis under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Sandoval, supra,* 41 Cal.4th at pp. 838–839.) In supplemental briefing on remand, the Attorney General argues that the *Cunningham* error was harmless beyond a reasonable doubt. First, without elaboration, the Attorney General asserts that the jury "unquestionably would have found at least one . . . aggravating circumstance under the beyond-a-reasonable doubt test." The Attorney General does not explain why this is so, and on the evidence presented to the jury, we cannot "conclude[] . . . beyond a reasonable doubt that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance" if it had been asked to decide the question. (*Sandoval,* at pp. 838–839.)

Merging the factors used to justify the sentence and the enhancement, the Attorney General next argues that the jury did, in effect, find several aggravating factors true by way of its true findings on the firearm enhancement (§ 12022.5, subd. (a)(1)) and the great bodily injury enhancement (§ 12022.7, subd. (a)), asserting that "by finding true the special charges that appellant used a gun and caused great bodily injury in count 4, the jury essentially found beyond a reasonable doubt that: (1) the victim was vulnerable; (2) the shooting involved a high risk to the victim; and (3) appellant planned and deliberated." We cannot agree. The jury's factual finding under section 12022.5, subdivision (a)(1), was a finding that Lincoln "personally used a firearm in the commission of a felony." With the other enhancement, the jury found Lincoln "personally inflict[ed] great bodily injury on any person other than an accomplice in the commission of a felony." (§ 12022.7, subd. (a).) Neither of these factual findings establishes that the victim was particularly vulnerable or that there was any planning or deliberation involved.

As far as the "inherent high risk" used to justify the high term on the firearms enhancement, the fact that great bodily injury was inflicted does not establish that there was high risk to the victim, as great bodily injury can be inflicted even when the chance was remote that harm would result or that an injury would be severe. The facts implicit in the true finding on the great bodily injury enhancement therefore do not justify the upper term on the firearm enhancement.

As far as the "inherent high risk" from using a firearm, the trial court did not explain what that risk was, so it is difficult to understand how the court conceived of that circumstance. Inherent high risk "is not a factor listed in the sentencing rules and it is not clear how this aggravating circumstance would have been defined for the jury had it been submitted to them." (*Sandoval, supra*, 41 Cal.4th at p. 843.) This undefined aggravator cannot justify imposing an upper term sentence on the enhancement for using a firearm. If factual determinations were required beyond the elements of the enhancement, then they are not encompassed by the jury's verdicts and we cannot say beyond a reasonable doubt that the jury would have made those factual determinations if the matter had been submitted for decision. If, however, as the Attorney General appears to posit, the very fact of the shooting demonstrates a high risk to the victim, then inherent high risk is not a proper aggravating factor for the firearm enhancement because, by definition, any victim of an assault with a firearm or any victim of an offense in which a firearm was used would have been subjected to that *inherent* high risk. (See Cal. Rules of Court, rules 4.420(d) [a fact that is an element of a crime may not be used to impose the upper term], 4.420(c) [fact charged and found as an enhancement may only be used to justify an upper term if the enhancement can be and is stricken].) Using an inherent

feature of an enhancement as a justification for imposing the high term on that enhancement would collapse the sentencing scheme by making every occurrence of that enhancement aggravated, undermining the purpose of an aggravating factor: "A fact is aggravating if it makes defendant's conduct distinctively worse than it would otherwise have been." (*People v. Zamarron* (1994) 30 Cal.App.4th 865, 872 [36 Cal.Rptr.2d 17]; see also *Black II, supra,* 41 Cal.4th at p. 817 ["An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.' [Citation.]"].)

While a reasonable jury certainly could have found that some or all of the aggravating factors relied on by the court were true beyond a reasonable doubt, we cannot say with confidence that it would have done so. As the California Supreme Court has observed, making assessments of what a jury would have decided with respect to "somewhat vague or subjective stan-dard[s]" is a thorny task, as "it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval, supra,* 41 Cal.4th at p. 840.) On the evidence presented to the jury, we cannot conclude beyond a reasonable doubt that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found any of these aggravating circumstances to be true if it had been asked to decide the question. (*Id.* at pp. 838–839.) Accordingly, we cannot say that the constitutional error was harmless, and we must therefore vacate Lincoln's total sentence to make available the full array of discretionary choices for resentencing. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258–1259 [131 Cal.Rptr.2d 628] [on remand for resentencing, the trial court is entitled to consider the entire sentence and is not limited to striking illegal portions of the sentence].)[3]

■ With respect to the resentencing on the offenses, the trial court must proceed pursuant to the reformed sentencing scheme described by the California Supreme Court in *Sandoval, supra,* 41 Cal.4th at pages 843 through 852. This sentencing scheme, however, applies only to the selection of the

---

[3] Although the trial court exceeded the limited authority conferred by our earlier remand order when it modified the stayed sentences on counts 5 and 6 by ordering them to be served consecutively, the scope of that remand is no longer relevant to our analysis because the underlying sentence on the principal term is constitutionally unsound according to *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856] and *Black II, supra,* 41 Cal.4th 799. That constitutional infirmity requires that the entire sentence be vacated and that the trial court have full discretion to sentence Lincoln anew in accordance with the Constitution and state law. (*Sandoval, supra,* 41 Cal.4th at pp. 843–852; *People v. Burbine, supra,* 106 Cal.App.4th 1250, 1258–1259.)

appropriate term of imprisonment for the substantive offenses. The Supreme Court in *Sandoval* performed what may be called a limited judicial reformation of section 1170 with respect to defendants whose cases were remanded for resentencing. The reformed sentencing scheme mirrors the Legislature's urgency legislation signed by the Governor on March 30, 2007, in which section 1170, subdivision (b) was amended to eliminate the statutory presumption for the middle term. Previous section 1170, subdivision (b), as it was in effect at the time of Lincoln's trial, provided that when an offense is punishable by one of three statutory terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." Rather than invent a system for charging and trying aggravating factors by jury under the reasonable doubt standard, the Legislature removed the statutory presumption of the middle term so that the section now reads, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b), as amended by Stats. 2007, ch. 3, § 2, eff. Mar. 30, 2007.)

■ The urgency legislation, however, did not change section 1170.1, subdivision (d), which establishes the same presumption of the middle term for enhancements that the former section 1170, subdivision (b) did for sentencing on criminal offenses. Section 1170.1, subdivision (d) provides, "If an enhancement is punishable by one of three terms, the court shall impose the middle term unless there are circumstances in aggravation or mitigation . . . ." This provision suffers from the identical constitutional infirmities identified by the United States Supreme Court in *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856], and is similarly unconstitutional. The Legislature has taken no step to amend this provision to render it compliant with the Sixth Amendment, and the California Supreme Court did not reform it in *Sandoval, supra,* 41 Cal.4th at pages 843 through 852.

■ We cannot profess to know whether the Legislature failed to remove the presumption of the middle term with respect to enhancements deliberately or inadvertently. While it may be that the omission was inadvertent in the rush to respond to the Supreme Court's decision in *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856], we cannot presume that to be the case in view of the fact that the Legislature has taken no action to remedy any oversight in the intervening months since the urgency legislation was enacted. When the Legislature's intent is not clear, judicial reformation of a statute is not an

option. (*Sandoval, supra,* 41 Cal.4th at p. 844 ["we have the authority to revise the DSL in a manner that avoids constitutional problems, if we conclude that the Legislature's intent clearly would be furthered by application of the revised version rather than by the alternative of invalidation"].) The *Sandoval* reformation does not address sentencing on sentence enhancements punishable by three terms and in the absence of legislative action, we cannot extend the reformation to this case.

That is not to say, however, that the same sentence may not constitutionally be imposed on remand. On remand on the substantive offenses, the trial court must proceed according to the *Sandoval* resentencing scheme. (*Sandoval, supra,* 41 Cal.4th at pp. 843–852.) With respect to sentencing on the section 12022.5, subdivision (a) enhancement, we observe that Lincoln has prior criminal convictions. The trial court may consider the fact of a defendant's prior conviction in sentencing without submitting the prior conviction to a jury. (*Apprendi, supra,* 530 U.S. at p. 490 ["Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"]; *Sandoval, supra,* 41 Cal.4th at pp. 836–837 ["the right to jury trial and the requirement of proof beyond a reasonable doubt do not apply to the aggravating fact of a prior conviction"].) And, of course, as the California Supreme Court ruled in *Black II,* "if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely,* [*supra,* 542 U.S. 296,] the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum.' " (*Black II, supra,* 41 Cal.4th at p. 813.) Therefore, the Supreme Court has held, it does not violate the Sixth Amendment for a trial judge to engage in additional fact finding with respect to other aggravating circumstances once a single constitutionally compliant aggravating circumstance has been identified. (*Black II,* at p. 816 ["imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions"].) Should the trial court consider Lincoln's prior criminal record to merit imposition of the upper term on the enhancement, the trial court may rely on this factor, whether alone or in conjunction with others, to justify that sentence. If the court does not wish to base an upper term on Lincoln's recidivism it must impose either the midterm or the lower term on that enhancement to be consistent with *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856].

## DISPOSITION

The sentence is vacated and the matter remanded for resentencing consistent with the views set forth in this opinion.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied December 13, 2007, and respondent's petition for review by the Supreme Court was denied March 12, 2008, S159696. Moreno, J., did not participate therein.