**Victor ABEYTA, Petitioner,**

v.

**G.J. GIURBINO, Warden, Respondent.**

**Case No. CV 06–2173–AG (OP).**

United States District Court,
C.D. California.

March 31, 2009.

Victor Abeyta, Imperial, CA, pro se.

Ryan Mitchell Smith, CAAG-Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

ANDREW J. GUILFORD, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. The Court concurs with and adopts the findings, conclusions, and recommendations of the Magistrate Judge.

IT IS ORDERED that Judgment be entered: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered granting the Petition and ordering the trial court to resentence Petitioner only on the California Penal Code section 12022.5(a) gun enhancement in accordance with Sixth Amendment principles and consistent with the views set forth in this Report and Recommendation.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

OSWALD PARADA, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Andrew J. Guilford, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## I.

### PROCEEDINGS

On April 11, 2006, Victor Abeyta ("Petitioner"), filed the current Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On June 1, 2006, Respondent filed an Answer to the Petition. On June 12, 2006, Petitioner filed a Traverse to the Answer. Thus, this matter is ready for decision.

## II.

### PROCEDURAL HISTORY

On April 9, 2003, Petitioner was convicted after a jury trial in the Los Angeles County Superior Court of assault with a firearm pursuant to California Penal Code section 245(a)(2).[1] (Clerk's Transcript ("CT") at 99.) The jury also found true the allegation that in the commission of the offense, Petitioner personally inflicted great bodily injury upon the victim, causing the victim to suffer from paralysis, within the meaning of California Penal Code section 12022.7(b). (*Id.*) The jury also found true the special gun use allegations within the meaning of California Penal Code sections 12022.5(a), and 12022.53(b), (c), and (d). (*Id.*)

On May 28, 2003, Petitioner was sentenced to a total state prison term of eighteen years, consisting of the mid-term of three years for assault with a firearm, a mandatory five years pursuant to California Penal Code section 12022.7(b) (great bodily injury causing paralysis), and the high term of ten years for the gun use allegation pursuant to California Penal Code section 12022.5(a).[2] (*Id.* at 132–33A.) The court provided no reasons for the sentences given. (*Id.*; Reporter's Transcript ("RT") at 1508–09.)

On October 15, 2004, 2004 WL 2320090, the California Court of Appeal reversed the section 12022.53(b), (c), and (d) findings on the ground that assault with a firearm is not an enumerated offense under that section, and affirmed Petitioner's conviction and sentence in all other respects. (Lodgment 5.)

On November 22, 2004, Petitioner filed a petition for review in the California Supreme Court. (Lodgment 6.) On January 12, 2005, the state supreme court denied the petition "without prejudice to any relief to which defendant might be entitled" after that court determined in *People v. Black*, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005) ("*Black I* "),[3] and *People v. Towne*, 44 Cal.4th 63, 78 Cal.Rptr.3d 530, 186 P.3d 10 (2008), the effect of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct.

---

**1.** Petitioner was acquitted of the charges of attempted murder and assault. (CT at 98, 100.)

**2.** California Penal Code section 12022.5(a) provides as follows:

Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense.

**3.** The decision in *Black I* was not helpful to Petitioner's claim.

2531, 159 L.Ed.2d 403 (2004), on California law. (Lodgment 7.)

On March 13, 2008, after the briefing in this matter was complete, Petitioner apparently filed a motion in the California Court of Appeal to recall the remittitur in light of Supreme Court's newly decided case of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).[4] (Official Records of California Courts.)[5] On March 25, 2008, the court of appeal denied the motion. (*Id.*)

On May 7, 2008, Petitioner filed a petition for review in the California Supreme Court. (*Id.*) On June 11, 2008, state supreme court denied the petition. (*Id.*)

## III.

### *SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL*

Since Petitioner is not challenging the sufficiency of the evidence to support the conviction, the Court adopts the factual discussion of the California Court of Appeal opinion as a fair and accurate summary of the evidence presented at trial:

### EVIDENCE

Michael Romero moved in with defendant in June 2002. Mr. Romero was defendant's step-nephew. Defendant's girlfriend, Sylvia Saldivar, also resided in his residence. Also residing in the same house was defendant's brother, Danny Abeyta.FN2 Defendant and Ms. Saldivar drank beer every night. Defendant often showed Mr. Romero a gun. The gun belonged to defendant's father. Mr. Romero described defendant's conduct thusly: "I would be on the couch laying down.... He would come over to the couch, showing his father's gun and telling me he missed his father and he missed his brother, who [had] passed away." Mr. Romero often discussed the problems he was having with his girlfriend with Ms. Saldivar. Defendant would interrupt conversations between Mr. Romero and Ms. Saldivar, stating: " 'What is going on? ... You guys having something between you two [?]' " Mr. Romero came home at approximately 9:30 p.m. on June 24, 2002. Mr. Romero had argued with his girlfriend. They argued about a man who was visiting her. Defendant and Ms. Saldivar were drinking at the kitchen table when Mr. Romero arrived. Mr. Romero sat down at the table with them. Mr. Romero did not drink anything. Mr. Romero had seen defendant drunk on previous occasions. Mr. Romero believed defendant was "[a] little tipsy" on June 24, 2002.

FN2. For purposes of clarity and out of no disrespect, Danny Abeyta will be referred to as Danny.

Mr. Romero received a telephone call from a friend, Jesse Gutierrez. Mr. Romero went out into the backyard and continued the conversation on a cellular telephone. Defendant came to the back porch and said: "Michael, come inside and go to bed. I am going to lock the door." Mr. Romero had a key to the house. Mr. Romero continued talking with Mr. Gutierrez on the telephone. Five minutes later, defendant repeated: "Michael, go inside. I am going to lock the door." Mr. Romero responded, "Hang on." Mr. Romero then ap-

---

**4.** *Cunningham* was decided on January 22, 2007.

**5.** The Court's independent review of the website for the California State Courts revealed this information. The Court takes judicial notice of the state appellate court records which are available on the Internet at http://appellatecases.courtinfo.ca.gov. *See Smith v. Duncan*, 297 F.3d. 809, 815 (9th Cir.2002) (federal courts may take judicial notice of relevant state court records in federal habeas proceedings).

proached defendant and said: "Why are you treating me like a little kid? You are not my father." Defendant repeated: "Go inside. I am going to bed. I am going to lock the door." Mr. Romero responded, "When I am finished, I will go . . . inside."

Defendant removed a gun from behind his back. Defendant pointed the gun at Mr. Romero's face. Defendant held the gun approximately one foot from Mr. Romero's face. Defendant again said, "Go inside and go to bed." Mr. Romero reached out to swipe the gun away and responded: "No, I am not going inside. . . . Get that shit out of my face." Mr. Romero pushed the gun away. Mr. Romero turned around and began to walk away. After walking approximately 10 feet, Mr. Romero looked over his right shoulder. Mr. Romero saw that defendant was still pointing the gun at him. Defendant fired the gun. Mr. Romero felt a bullet enter his body. Mr. Romero was unable to talk or move. Mr. Romero heard defendant say: " 'Mike, Mike, get up. Get up.' " Mr. Romero also heard the voices of Ms. Saldivar and Danny. Mr. Romero awoke one and one-half months later in the hospital. When he awoke, Mr. Romero was unable to move any part of his body. At the time of trial, Mr. Romero had experienced three or four surgeries and expected to have one more. Mr. Romero regained some movement in his arms. Mr. Romero remained paralyzed from the chest down. The bullet remained in his spine.

Ms. Saldivar had gone to her bedroom before Mr. Romero went outside. Shortly thereafter, she heard the back door close again. Ms. Saldivar presumed defendant had also gone outside because he was no longer in the kitchen. Ms. Saldivar sat down on her bed. She heard the "pop" of a gunshot. Ms. Saldivar and Danny ran out the back door.

Defendant was in the driveway. Defendant told Danny to go take care of Mr. Romero. Ms. Saldivar saw Mr. Romero laying on the grass. Ms. Saldivar testified, "[Defendant] told me that he shot Michael by accident." Ms. Saldivar had not seen the gun that night. However, Ms. Saldivar had previously seen the gun when defendant took it to car shows for protection. Ms. Saldivar also saw the gun when defendant showed it to his friends when he was intoxicated. Ms. Saldivar believed defendant was a "little bit" intoxicated on June 24, 2002.

Danny was asleep when Mr. Romero arrived home on June 24, 2002. Danny got up to use the bathroom. Danny heard a "pop" that sounded like it came from the backyard. Danny went to the back door. Danny described what happened next: "I went to the back to see what was going on. . . . [¶] . . . I got to the back door, my brother came up to me and said he shot Michael by accident." Defendant took Danny to where Mr. Romero was on the ground. Danny did not see the gun. Danny asked Mr. Romero, "Can you hear me[?]" Mr. Romero did not respond. Defendant tried to awaken Mr. Romero. Danny returned to the house, got a towel, and called the police. Defendant took the phone from Danny. Danny went outside and placed the towel around Mr. Romero's neck. Danny again asked Mr. Romero, "Can you hear me?" Mr. Romero moved his head up and down.

Los Angeles Police Officer Salvador Lizarraga went to defendant's home on June 24, 2002, at approximately 10:30 p.m. regarding the shooting. Defendant walked out of the residence with his hands up in the air. Officer Lizarraga asked defendant where the gun was located. Defendant told Officer Lizarraga that the gun was on top of the refrigerator. Officer Lizarraga took possession

of a blue steel revolver from on top of the refrigerator in defendant's kitchen. The gun was fully loaded with one spent cartridge. Officer Lizarraga found Mr. Romero in the backyard. Mr. Romero was lying face down with a towel around his neck. Mr. Romero did not respond at all to Officer Lizarraga's questions. Mr. Romero did not move his head or blink his eyes.

Los Angeles Police Detective Victor Corella also went to defendant's home on June 24, 2002, following the shooting. Mr. Romero had been taken to the hospital. Defendant was still in custody at his residence. Detective Corella interviewed Ms. Saldivar and Danny. Neither mentioned that defendant told them that the shooting was an accident. Defendant did not appear intoxicated.

(Lodgment 5 at 2–5.)

### IV.

#### *PETITIONER'S CLAIM*

In his Petition, Petitioner raises only one claim, i.e., the trial court's imposition of the upper term for the gun use enhancement under California Penal Code section 12022.5(a) violated Petitioner's Sixth Amendment right to a jury trial. (Pet. at 6, Attachment).

### V.

#### *STANDARD OF REVIEW*

The standard of review applicable to Petitioner's claim is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Further, a State court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of State court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson,* 217 F.3d 663, 669 n. 7 (9th Cir.2000); *Van Tran v. Lindsey,* 212 F.3d 1143, 1154 (9th Cir.2000), *overruled on other grounds by Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir. 1999). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir.2004); *see also Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 654, 166 L.Ed.2d

482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

Although a particular State court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. *Williams,* 529 U.S. at 391, 413, 120 S.Ct. 1495. A State court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. When a State court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d) (1)." *Id.* at 406, 120 S.Ct. 1495. However, the State court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* 537 U.S. at 8, 123 S.Ct. 362.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.' " *Early,* 537 U.S. at 11, 123 S.Ct. 362 (*citing* 28 U.S.C. § 2254(d)) (emphasis added). Consequently, a State court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular

case. *See Williams,* 529 U.S. at 406–10, 413, 120 S.Ct. 1495 (e.g., the rejected decision may state *Strickland* rule correctly but apply it unreasonably); *Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the State court's application of Supreme Court law was "objectively unreasonable." *Woodford,* 537 U.S. at 27, 123 S.Ct. 357; *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. An "unreasonable application" is different from an erroneous or incorrect one. *Williams,* 529 U.S. at 409–10, 120 S.Ct. 1495; *see also Woodford,* 537 U.S. at 25, 123 S.Ct. 357; *Bell v. Cone,* 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

## VI.

## *DISCUSSION*

### A. *Habeas Relief Is Warranted on Petitioner's Claim That Sentencing Errors Violated His Sixth Amendment Rights.*

#### 1. *Background.*

Petitioner contends that the trial court committed *Blakely* error,[6] and violated his Sixth Amendment rights to have any factors which increased his sentence beyond the mid-term determined by a jury. (Pet. at 6, Attachment.)

Specifically, at Petitioner's sentencing hearing, the trial court noted that it had reviewed the sentencing recommendations. (RT at 1501.) Petitioner had filed a sentencing memorandum arguing for the low term. (CT at 101–03.) He also presented several letters from family and friends on his behalf. (*Id.* at 104–26.) Petitioner also argued that based upon the unusual situation of the case and the letters in

---

**6.** *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

support of Petitioner, he should receive the low term. (RT at 1507–08.) Respondent contends that the probation officer recommended the high term, stating, "Although [Petitioner] lacks a known criminal history, his alleged violent and criminal behavior in the present matter is serious and cannot be justified. In addition, such impulsive, and violent behavior should not be allowed in the community, risking the safety and well-being of the victim, as well as others." (*Id.* at 146–47.) [7]

Without objection, the trial court imposed a total state prison term of eighteen years, computed as follows: the mid-term of three years on the assault with a firearm charge, plus five years for the great bodily injury enhancement, plus the high term of ten years for the gun use enhancement. (CT at 132–33A.) The trial court did not provide any reasons for imposing the high term on the gun use enhancement. (RT at 1508–10.)

### 2. *California Court of Appeal Opinions.*

The California Court of Appeal denied Petitioner's *Blakely* claim and stated as follows:

> Defendant argues that the trial court improperly relied on aggravating factors without according defendant a jury trial as required by *Blakely v. Washington* (2004) 542 U.S. 296, [302–04, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403]. This contention was not asserted in the trial court. Therefore, all of defendant's *Blakely* based federal constitutional contentions have been forfeited. (*United States v. Cotton* (2002) 535 U.S. 625, 631–634 [122 S.Ct. 1781, 152 L.Ed.2d 860]; *People v. Sample* (Sept. 13, 2004,

C044445) 122 Cal.App.4th 206, —— [18 Cal.Rptr.3d 611].)

(Lodgment 5 at 7–8.)

Justice Mosk, concurring in the judgment, disagreed:

> I disagree with the majority that defendant has forfeited his right to trial under *Blakely v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531, 2537, 159 L.Ed.2d 403]. I agree with the analysis in *People v. Barnes* (2004) 122 Cal. App.4th 858 [19 Cal.Rptr.3d 229], 2004 WL 2137361 (Cal.App. 6th Dist.). There the court noted that the federal rule set forth in *United States v. Cotton* (2002) 535 U.S. 625, 631, 634 [122 S.Ct. 1781, 152 L.Ed.2d 860] "appears stricter than California's rule." (*People v. Barnes, supra,* [19 Cal.Rptr.3d 229], 2004 WL 2137361.)

(*Id.* at last page.)

### 3. *Analysis.*

#### a. *Procedural Default.*

■ Respondent argues that Petitioner's claim is procedurally barred. (Answer at 7–9.) Respondent notes that a federal court may not review a claim if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support it. (*Id.* at 7–8.) Respondent also notes that federal habeas review of such claims are barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. (*Id.* at 8) (*citing Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

---

**7.** These pages, containing the probation report, were not part of the record lodged with

the Court.

Respondent then argues that California's contemporaneous objection rule bars federal review of a claim of trial court error. (*Id.*) Because Petitioner failed to object in the trial court, the California Court of Appeal, citing *United States v. Cotton*, 535 U.S. at 631–34, 122 S.Ct. 1781, held that Petitioner's *Blakely* claim was barred. (*Id.*; Lodgment 5.) Respondent contends that this decision was based on a state procedural ground which is both independent and adequate, and consistently applied by California courts.

Because the alleged ground for rejection of Petitioner's claim is of dubious adequacy, this Court disagrees with Respondent's argument that the state appellate court's decision imposed a procedural bar. The Court finds the adequacy of the alleged state procedural rule questionable in light of the California Supreme Court's later decisions *excusing* the failure to assert the *Blakely* error at the trial court level. In *People v. Black*, 41 Cal.4th 799, 811, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007) ("*Black II*"), the California Supreme Court, acknowledging that the *Apprendi* line of cases was changing the law in a rather surprising way,[8] rejected the argument that a defendant had forfeited his right to raise the jury trial issue because he had not objected to the procedure at the time of sentencing. *Black II*, 41 Cal.4th at 811, 62 Cal.Rptr.3d 569, 161 P.3d 1130.[9] The state high court's forgiveness of the failure to object to a procedure does call into question the adequacy of a purported procedural bar based on that same procedure. Thus, the Court finds that the California Court of Appeal did not apply a state procedural rule adequate to bar consideration of Petitioner's claim herein.

### b. *Analysis of the Merits.*

■ The Supreme Court decided in *Blakely* that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. *Blakely*, 542 U.S. at 303–04, 124 S.Ct. 2531. The defendant in *Blakely* had entered a guilty plea, after which he was given a sentence in excess of the statutory maximum on the basis of the trial judge's finding that he had acted with

---

8. *See* Discussion, Part VI.A(3)(b), *infra*.

9. *Black II* was decided on July 19, 2007, more than a year after briefing in this case was completed. In that decision the court stated:

> Prior to *Blakely*, it was widely assumed that for the purposes of the rule established in *Apprendi*, the maximum term authorized by the jury's verdict was the upper term. In a case decided after *Apprendi*, we recognized that *Apprendi* implicitly overruled our holding in *People v. Wims* (1995) 10 Cal.4th 293, 41 Cal.Rptr.2d 241, 895 P.2d 77 that the failure to instruct the jury on an element of a sentencing enhancement violated state law, but not the federal Constitution. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326, 109 Cal.Rptr.2d 851, 27 P.3d 739.) *Apprendi* was assumed to apply to the determination of sentence enhancements, but not to aggravating circumstances or other sentencing decisions. We agree with the assessment of a federal court that "[w]ith its clarification of a defendant's Sixth Amendment rights, the *Blakely* court worked a sea change in the body of sentencing law." (*United States v. Ameline* (9th Cir.2004) 376 F.3d 967, 973, fn. omitted.) The circumstance that some attorneys may have had the foresight to raise this issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated the high court's decision in *Blakely*. We conclude that, at least with respect to sentencing proceedings similar to the one here at issue, preceding the *Blakely* decision, a claim of sentencing error premised upon the principles established in *Blakely* and *Cunningham* is not forfeited on appeal by counsel's failure to object at trial.

*Black II*, 41 Cal.4th at 811–12, 62 Cal.Rptr.3d 569, 161 P.3d 1130.

"deliberate cruelty." *Id.* at 300, 124 S.Ct. 2531. The Supreme Court determined that the sentence was improper because the "deliberate cruelty" finding was supported by facts that "were neither admitted by petitioner nor found by a jury." *Id.* at 303, 124 S.Ct. 2531. As explained by the *Blakely* Court, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Id.* at 304, 124 S.Ct. 2531 (internal citation and quotation marks omitted). In reaching this determination, the Supreme Court applied the rule set forth earlier in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 301, 124 S.Ct. 2531.

Following *Blakely,* the Supreme Court held in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that the decision in *Blakely* applied to the United States Sentencing Guidelines. The Supreme Court explained that their precedents "make clear that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Booker,* 543 U.S. at 232, 125 S.Ct. 738 (internal quotation marks omitted).

Subsequently, the California Supreme Court held in *Black I* [10] that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence ... under California law does not implicate a defendant's Sixth Amendment right to a jury trial." *Black I,* 35 Cal.4th

at 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534. The California Supreme Court reasoned that a "judge's discretion to identify aggravating factors in a case is guided by the requirement that they be 'reasonably related to the decision being made.'" *Id.* at 1255, 29 Cal.Rptr.3d 740, 113 P.3d 534 (citation omitted). Thus, the California Supreme Court held, "[t]he imposition of an upper-term sentence under California's determinate sentencing law does not implicate the concerns" expressed by the majority opinion in *Booker. Id.* at 1256, 29 Cal.Rptr.3d 740, 113 P.3d 534.

The United States Supreme Court rejected this reasoning in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 868, 166 L.Ed.2d 856 (2007), and held that "[i]n accord with *Blakely* ... the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." Further, facts permitting the imposition of an upper term sentence must be found by the jury, not the judge. *Cunningham,* 127 S.Ct. at 868–71. In so finding, the United States Supreme Court expressly rejected the California Supreme Court's conclusions in *Black I* that the upper term, and not the middle term, qualifies as the relevant statutory maximum and that California's determinate sentencing law ("DSL") "does not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee." *Id.* at 869. Thereafter, the Supreme Court vacated *Black I* and remanded it to the California Supreme Court for further consideration in light of *Cunningham. Black v. California,* 549 U.S. 1190, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007).

In *Black II,* discussed briefly above, the California Supreme Court noted that under the DSL (as in effect prior to the emergency amendments the California

---

**10.** When the California Supreme Court denied Petitioner's petition for review, it denied the petition without prejudice pending its decision in *Black I.* (Lodgment 7.)

Legislature enacted subsequent to *Cunningham*), "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term [sentence]." *Black II*, 41 Cal.4th at 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (*citing People v. Osband*, 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640 (1996)). Under California's DSL, three terms of imprisonment are specified by statute for most offenses, but the trial court's discretion in selecting among the three options is limited by California Penal Code section 1170 and California Rules of Court 4.420. *See Black II*, 41 Cal.4th at 808–09, 62 Cal.Rptr.3d 569, 161 P.3d 1130. In *Black II*, the California Supreme Court held that, in situations where "one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*," the "Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances." *Id.* at 812, 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130. The California Supreme Court found Black's upper term sentence to be constitutional because the trial judge had imposed an upper term based on several aggravating circumstances including two—the defendant's use of force, which "was supported by the jury's verdict," and the defendant's criminal history—which "independently satisfy Sixth Amendment requirements." *Id.* at 816–20, 62 Cal.Rptr.3d 569, 161 P.3d 1130.

■ The Ninth Circuit recently held that "*Apprendi, Blakely,* and *Booker* made 'courts throughout the land' aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants," and, therefore, *Cunningham* "did not announce a new rule of constitutional law and may be applied retroactively on collateral review." *Butler v.*

*Curry*, 528 F.3d 624, 639 (9th Cir.2008). According to the *Butler* court, "*Cunningham* did not add any new elements or criteria for determining when a state statute violates the Sixth Amendment. It simply applied the rule of *Blakely* to a distinct ... state sentencing scheme." *Butler*, 528 F.3d at 636 (internal citations and quotation marks omitted). Accordingly, *Cunningham* applies to Petitioner's case, and Petitioner's claim is not barred under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as argued by Respondent.

■ *Apprendi* and *Blakely* mention two related rights: the right to a jury trial and the right to proof beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476–77, 490, 120 S.Ct. 2348. That level of proof applies not only to elements of the crime but also to sentencing factors. Here, the sentence imposed deprived Petitioner of his right to have the facts necessary to impose the upper term sentence for the gun enhancement found true by proof beyond a reasonable doubt.

After review of the record, the Court finds that even under the California Supreme Court's most recent effort to reconcile *Apprendi* and California's determinate sentencing law ("DSL"), Petitioner could not have been sentenced to the upper term for the gun enhancement. Before *Cunningham* was issued, the California Supreme Court had determined "that the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." *Black I*, 35 Cal.4th at 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534. When the U.S. Supreme Court decided *Cunningham*, it vacated and remanded *Black I*. Thereafter, the California Supreme Court issued its decision in *Black II*.

In *Black II* the California Supreme Court saw the jury trial and proof beyond a reasonable doubt rights as tied to the factual findings, not the sentencing choices based on those factual findings. As long as one aggravating circumstance had been determined in a constitutionally sound way (i.e., with no violation of the rights to a jury trial and proof beyond a reasonable doubt), the defendant was within the group as to whom the upper term legally could be applied and was not "legally entitled" to the middle term. *See id.* at 813, 62 Cal. Rptr.3d 569, 161 P.3d 1130; *see also Blakely*, 542 U.S. at 308–09, 124 S.Ct. 2531. For that defendant, the upper term sentence was the statutory maximum for purposes of *Apprendi* and *Blakely*. *See Black II*, 41 Cal.4th at 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130. The defendant did not have a right to a jury trial on all aggravating circumstances as long as one had been established in compliance with *Blakely* and did not have a right to a jury trial on the question of whether aggravating circumstances outweighed the mitigating ones. *Id.* at 814–15 & n. 4, 62 Cal.Rptr.3d 569, 161 P.3d 1130.

Even if the restrictive interpretation in *Black II* is a correct interpretation of the extent of the federal rights to a jury trial and proof beyond a reasonable doubt under California's DSL, there was not a single fact found by the judge in this case, let alone one that bumped Petitioner into the group of defendants who lawfully could receive an upper term sentence for the gun enhancement under *Black II*. Petitioner had no prior convictions and his firearm use and the fact that the crime resulted in great bodily injury causing paralysis were already doing duty as sentence enhancements under other provisions and did not contribute to making him someone eligible to receive the upper term under California law.

Accordingly, this Court finds that there was *Blakely* error in this case. The trial judge imposed the upper term sentence of ten years on the gun enhancement without identifying the circumstances used to impose that term. Nor does the Court's review of the record find anything to Constitutionally support the court's imposition of the high term in the absence of a jury trial.[11]

## B. *Harmless Error Analysis.*

The last question is whether the error was harmless. *Apprendi* errors are subject to harmless error analysis. *See Washington v. Recuenco*, 548 U.S. 212, 218–22, 126 S.Ct. 2546, 2551–53, 165 L.Ed.2d 466 (2006) (holding that *Apprendi* errors are reviewed for harmlessness using the framework of *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). *See also United States v. Zepeda–Martinez*, 470 F.3d 909, 910 (9th Cir.2006). Under *Recuenco* and *Neder*, a sentencing error is harmless if the court finds beyond a reasonable doubt that the result "would have been the same absent the error." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827. *Neder* explained that where the record contains "overwhelming" and "uncontroverted" evidence supporting an element of the crime, the failure to submit that element of the offense to the jury is harmless. *Id.* at 17, 18, 119 S.Ct. 1827. Conversely, the error is not harmless if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." *Id.* at 19, 119 S.Ct. 1827. *Zepeda–Martinez* and *Neder* were direct appeal cases and therefore articulated a standard slightly differently than that generally applicable in a habeas action where relief is not available unless the trial error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abraham-*

---

**11.** Petitioner had no prior convictions and    made no relevant admissions.

son, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Contending the error in this case was harmless, Respondent argues that:

> [I]t is beyond a reasonable doubt that the jury would have found, not just one, but several aggravating circumstances to be true. First, Romero was particularly vulnerable. He had his back to Petitioner and was talking on the telephone.[12] There was no way for Romero to defend himself. Second, Petitioner took advantage of a position of trust or confidence to commit the offense. Petitioner was Romero's step-uncle, and he took Romero into his home to live.[13] Third, it was proved beyond a reasonable doubt that Petitioner engaged in serious conduct that indicates he is a danger to society.[14] Finally, the manner in which Petitioner carried out the crime showed planning and sophistication. Petitioner obtained his gun and hid it behind his back.[15] Petitioner must have intended to use the weapon before approaching Romero.

(Answer at 21.)

Regardless of whether this Court must find that the error did not result in actual prejudice or must find beyond a reasonable doubt that the result would have been the same absent the error, the requisite level of certainty does not exist in Petitioner's case. Indeed, there is some grave doubt as to whether a jury would have found, beyond a reasonable doubt and based solely on the circumstances set forth by Respondent, that the victim was "particularly vulnerable," that Petitioner took advantage of a position of trust when he committed the assault, or that the manner of the crime showed planning, sophistica-

---

**12.** *But see Butler*, 528 F.3d at 649–50 (holding that a victim must be "particularly" vulnerable, i.e., has a characteristic that in combination with the manner in which the crime was committed, e.g., while the victim's back was turned, renders him more vulnerable than other victims in the same situation); *see also* Cal. R. Ct. 4.421(a)(3). In *Butler*, the court noted that it had found no case in which attacking a victim from behind was the sole basis for a finding of particular vulnerability. *Id.* at 649. As in *Butler*, there was no evidence in this case that the thirty-five year old victim was "particularly" vulnerable simply because his back was turned—indeed, the victim here had previously pushed the gun away when Petitioner pointed it at him, telling him to "Get that shit out of my face," before walking away. (RT at 623.)

**13.** In order to find this aggravating factor, it must be found beyond a reasonable doubt that the perpetrator "took advantage" of a position of trust or confidence to commit the offense. Cal. R. Ct. 4.421(a)(11). In this case, a jury might reasonably find that there was no indication Petitioner was "taking advantage" of his step-uncle relationship with the thirty-five year old victim when he committed the crime of assault with a firearm.

**14.** With this factor, Respondent is referencing California Rule of Court 4.421(b)(1) ("[t]he defendant has engaged in violent conduct that indicates a serious danger to society"). Again, a jury might not conclude beyond a reasonable doubt that this one instance of violent conduct, for which there is some evidence that the shooting was accidental, is indicative that the forty-nine year old Petitioner would be a danger to society, especially in light of the fact that Petitioner had no prior convictions, had worked at the same job for more than twenty years, and apparently had a very positive reputation among his family, friends, neighbors, and coworkers. (CT at 104–24.)

**15.** *See* Cal. R. Ct. 4.421(a)(8) ("The manner in which the crime was carried out indicates planning, sophistication, or professionalism."). This Court does not agree that Petitioner's hiding the gun behind his back, in light of the other surrounding circumstances, is necessarily indicative that a jury would find this particular factor to be true beyond a reasonable doubt.

tion, or professionalism. (*See supra* notes 12–14.) Under the framework identified in *Neder* and *Zepeda–Martinez*, this Court looks at the record to consider the state of the evidence in support of the sentencing factor to determine whether the error was harmless. As discussed above, the sentencing judge provided no reason, let alone a reason supported by uncontroverted and overwhelming evidence, to support his imposition of the upper term on the gun enhancement. The hypothetical bases allegedly supporting the imposition of the upper term as surmised by Respondent were not elements of the crimes of conviction found true by a jury beyond a reasonable doubt,[16] nor is this Court convinced that the issues are as clear as Respondent would have this Court believe given the factors in mitigation [17] (e.g., no prior criminal history, intoxication/alcohol use, stable work history, reputation, cooperation with the police investigation, and a total of twelve letters of support signed by thirty co-workers, neighbors, friends, and family). Nor was a single aggravating factor set forth by the sentencing judge that would make Petitioner not legally entitled to receive the middle term. Thus, the error was not harmless.[18]

Based on the foregoing, the Court finds that the California Court of Appeal's determination was not the result of a reasonable application of clearly established federal law, as determined by the United States Supreme Court. In other words, the state court failed to reasonably reach a determination that was consistent with Supreme Court precedent. *Butler*, 528 F.3d at 640.

## VII.

### *RECOMMENDATION*

The Petition should be granted. Petitioner's rights under *Apprendi* and *Blake-*

---

16. *See, e.g., People v. Lincoln*, 157 Cal.App.4th 196, 203, 68 Cal.Rptr.3d 596 (2007) (true findings on a firearm enhancement and great bodily injury enhancement not an indication that the jury found beyond a reasonable doubt that the victim was particularly vulnerable, that the shooting involved a high risk to the victim, or that the crime of assault with a firearm was planned and deliberated, and therefore, cannot support the imposition of the high term).

17. To determine whether to impose the lower, middle or upper term sentence for a crime under California's DSL, the sentencing judge considers the aggravating circumstances and mitigating circumstances relating to the crime and defendant. *See* Cal. Rules of Court 4.420, 4.421, 4.423.

18. The Court notes that with respect to resentencing on a base offense, a trial court must proceed pursuant to the reformed sentencing scheme described by the California Supreme Court in *People v. Sandoval*, 41 Cal.4th 825, 843–52, 62 Cal.Rptr.3d 588, 161 P.3d 1146 (2007). *Lincoln*, 157 Cal.App.4th at 204–05, 68 Cal.Rptr.3d 596. This sentencing scheme, however, "applies only to the selection of the appropriate term of imprisonment for the substantive offenses," and the Legislature subsequently amended only California Penal Code section 1170(b) which removed the statutory presumption of the middle term and provided for imposition of sentence at any of the three possible terms as within the sound discretion of the court. *Id.*

As noted by the court in *Lincoln*, the emergency legislation did not affect California Penal Code section 1170.1(d) which still provides that with respect to an *enhancement* punishable by one of three terms, the middle sentence shall be imposed unless there are circumstances in aggravation or mitigation. *Id.* at 205, 68 Cal.Rptr.3d 596. As a result, section 1170.1(d), the enhancement provision at issue herein, still suffers from "the identical constitutional infirmities identified by the United States Supreme Court in *Cunningham*." *Id.* Thus, on remand for resentencing of Petitioner's section 12022.5 gun enhancement, because he has no prior convictions and did not admit any aggravating factors, the trial court must impose either the midterm of four years or the lower term of three years to be consistent with *Cunningham* and satisfy the Constitution.

*ly* to be sentenced by a jury based on facts proven beyond a reasonable doubt were violated when he received the unexplained upper term of ten years as the base term for his sentencing enhancement (instead of the mid-term of four years).

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered granting the Petition and ordering the trial court to resentence Petitioner only on the California Penal Code section 12022.5(a) gun enhancement in accordance with Sixth Amendment principles and consistent with the views set forth in this Report and Recommendation.

DATED: October 16, 2008