Filed 10/3/16  P. v. Macauley CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MOHAMED N. MACAULEY,<br><br>    Defendant and Appellant. | B264034<br><br>(Los Angeles County<br>Super. Ct. No. TA121607) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed and remanded with directions.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

On remand the trial court sentenced Mohamed Newlove Macauley to the upper term of eight years on a conviction for pimping a minor under the age of 16 years (Pen. Code, § 266h, subd. (b)(2))[1] and to consecutive terms of two years on two convictions for pandering a minor under the age of 16 years (§ 266i, subd. (b)(2)). Macauley appeals the trial court's decisions to impose the upper term on his pimping conviction and a consecutive term on one of the pandering convictions. Macauley argues the trial court's sentence violated his Sixth Amendment right to a jury trial, the court relied on aggravating factors that were inherent in the commission of the offenses, and the court relied on the same aggravating factors in selecting the upper term on the pimping count that the court relied on in imposing the consecutive sentence on the pandering count. We remand for a recalculation of Macauley's presentence custody credits, direct the trial court to correct errors in the abstract of judgment, and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2012, after hearing evidence that Macauley found two 13-year-old girls, S.T. and A.H., who had run away from home and put them to work as prostitutes, a jury convicted Macauley of two counts of pimping a minor under 16 years of age[2] and two

---

[1]    Statutory references are to the Penal Code.

[2]    A person is guilty of pimping "who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person." (§ 266h, subds. (a), (b).) If, as here, "the person engaged in prostitution is under 16 years of age, the offense is punishable by imprisonment in the state prison for three, six, or eight years." (§ 266h, subd. (b)(2).)

counts of pandering a minor under 16 years of age.[3]  One count of each offense related to each girl.  In a prior appeal, we reversed the conviction for pimping S.T. for insufficient evidence, affirmed the remaining convictions, and remanded for resentencing.

At the resentencing hearing, counsel for Macauley, citing mitigating factors that Macauley was in state prison for the first time and had performed well there, asked the court to impose the middle or lower term on the pimping conviction and a concurrent sentence on the conviction for pandering A.H.  The court acknowledged these mitigating factors, but determined "the aggravating factors far outweigh the mitigating factors."  After noting that Macauley "grabbed two 13-year-old girls, took them to different parts of Los Angeles County, and made them sell their bodies," the court observed, "That's a pretty egregious crime."  The court continued:  "So with that said, the court is going to go ahead and sentence the defendant to the high term in count 2 [pimping A.H.], which is eight years.  And the court is doing that because of the vulnerability of the victims involved.  Not just one.  There were two victims involved.  The court is going to look at the sophistication of the crime.  You had another prostitute with you that you also had since perhaps she was young, if memory serves me, and she acted as the lookout.  You were in one car, she was across the street, and you monitored how well they were doing, flagging down people out on the street, and so they can go off with strangers.  Thirteen-year-old girls, with strangers, performing sex for money in your pockets.  Sophistication, definitely great.  Also you took one of them to go get clothes, high heels, the short shirts.  You took pictures of her so you could sell the photographs."  "Also," the court added, "your criminal history certainly escalated.  You put these girls in a vulnerable position, and we all know what happens with prostitutes.  And they very well are in a position

---

[3]    As relevant here, a person is guilty of pandering if he or she "[p]rocures another person for the purpose of prostitution" or "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute."  (§ 266i, subd. (a)(1)-(2).)  If, as here, the pandering victim is a minor under the age of 16 years, "the offense is punishable by imprisonment in the state prison for three, six, or eight years."  (§ 266i, subd. (b)(2).)

where they could easily be killed. These were minors, and you were definitely in the leadership role in every aspect of this."

The court sentenced Macauley to the upper term of eight years on the pimping conviction and two years (one-third the middle term) on each pandering conviction, both two-year sentences to run consecutively, for a total of 12 years. The court awarded Macauley the same 488 days of presentence custody credit (244 actual days and 244 days of conduct credit) the court had awarded at the original sentencing hearing. Macauley timely appealed.

## DISCUSSION

Macauley raises three challenges to his upper term sentence for pimping and his consecutive sentence for pandering A.H.[4] First, he contends both sentences violated his Sixth Amendment right to a jury trial. Second, he contends the trial court erred by relying on aggravating factors that were inherent in the commission of the offenses. Third, he contends the trial court erred by relying on the same aggravating factors in imposing the upper term on the conviction for pimping that the court relied on in imposing the consecutive sentence for the pandering conviction.[5]

---

[4] Macauley does not challenge his consecutive sentence for pandering S.T.

[5] Macauley concedes he did not raise any of these objections at his resentencing hearing, and to avoid forfeiture of his arguments he contends, among other things, that his counsel rendered ineffective assistance in failing to object at that time. Because we find the objections are meritless, Macauley cannot show his counsel was ineffective in failing to make them. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Carter* (2003) 30 Cal.4th 1166, 1208 [defendant's "derivative claim of ineffective assistance of counsel in failing to object to the challenged inquiry lacks merit"]; *People v. Woods* (2015) 241 Cal.App.4th 461, 484 [ineffective assistance of counsel claim based on failure to object to jury instruction was meritless because instruction was not erroneous].)

4

A. *Applicable Law and Standard of Review*

A trial court's decision whether to impose the lower, middle, or upper term is governed by section 1170, subdivision (b), which provides in relevant part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . . ." "[T]he broad discretion given to trial courts by section 1170 is subject to review for an abuse of discretion. [Citation.] '[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.'" (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196; accord, *People v. Sandoval* (2007) 41 Cal.4th 825, 847; *People v. Willover* (2016) 248 Cal.App.4th 302, 323.) Subject to certain exceptions, "a trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made." (*Moberly*, at p. 1196; see *Sandoval*, at p. 848; Cal. Rules of Court, rule 4.408(a).)[6]

Similarly, "[u]nder section 669, a trial court has discretion to determine whether to impose sentences consecutively or concurrently." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1025; accord, *People v. Bradford* (1976) 17 Cal.3d 8, 20.) In exercising that discretion, the court, with certain exceptions, may consider "[a]ny circumstances in aggravation or mitigation." (Rule 4.425(b).) "In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal." (*People v. Bradford*, *supra*, 17 Cal.3d at p. 20; accord, *People v. Shenouda* (2015) 240 Cal.App.4th 358, 369.)

---

[6] References to rules are to the California Rules of Court.

B. *Macauley's Sentence Does Not Violate the Sixth Amendment*

Macauley first attacks the constitutionality of California's determinate sentencing law. He contends that, by relying on factors that "were neither expressly found by the jury nor implicit in their verdict(s)" to impose the upper term on his pimping conviction, the trial court violated his Sixth Amendment right to a jury trial under the principles of *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).

Concerning the Sixth Amendment right to a jury trial as applied to the states under the due process clause of the Fourteenth Amendment, the United States Supreme Court in *Apprendi* held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) The United States Supreme Court explained in *Blakely v. Washington* (2004) 542 U.S. 296 that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (*Id.* at pp. 303-304.)

In *Cunningham* the United States Supreme Court applied these principles to California's determinate sentencing law, which at that time provided that, for statutory offenses specifying three terms of imprisonment, "'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*Cunningham*, *supra*, 549 U.S. at p. 277, quoting former § 1170, subd. (b).) The Supreme Court in *Cunningham* observed that this provision, "and the Rules [of Court] governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts— whether related to the offense or the offender—beyond the elements of the charged offense." (*Id.* at p. 279.) The United States Supreme Court concluded that, by "assign[ing] to the trial judge, not to the jury, authority to find the facts that expose a

6

defendant to an elevated 'upper term' sentence," the determinate sentencing law violated the Sixth Amendment. (*Cunningham*, *supra*, 549 U.S. at p. 274; see *Sandoval*, *supra*, 41 Cal.4th at pp. 831-832, 835.)

The California Legislature responded to *Cunningham* by amending section 1170, subdivision (b), to its current form. (Stats. 2007, ch. 3, § 2; *People v. Jones* (2009) 178 Cal.App.4th 853, 866; see *People v. Wilson* (2008) 164 Cal.App.4th 988, 992 [the amendment responded "to *Cunningham's* suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term"].) Under section 1170, subdivision (b), as amended, "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*Wilson*, at p. 992; see *Jones*, at p. 866 [the amendment "essentially eliminated the middle term as the statutory maximum absent aggravating factors"].)

Macauley acknowledges this "effort to constitutionalize" California's determinate sentencing law, but suggests the current version of section 1170, subdivision (b), violates the Sixth Amendment "for much the same reason as did its predecessor statute." In support of his argument he cites only the United States Supreme Court's statement in *Cunningham* that "broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." (*Cunningham*, *supra*, 549 U.S. at p. 290.)

Under amended section 1170, subdivision (b), however, "trial courts are free to impose an upper term sentence without engaging in additional fact finding." (*People v. Pham* (2009) 180 Cal.App.4th 919, 930; see *Sandoval*, *supra*, 41 Cal.4th at pp. 846-847

7

[the current version of the determinate sentencing law requires the trial court "to specify reasons for its sentencing decision, but . . . not . . . to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances"]; *People v. Jones*, *supra*, 178 Cal.App.4th at p. 866 ["trial courts now have the discretion under section 1170, subdivision (b), to select among the lower, middle, and upper terms specified by statute without stating ultimate facts deemed to be aggravating or mitigating under the circumstances and without weighing aggravating and mitigating circumstances"].) As the California Supreme Court concluded in *Sandoval*, "affording the trial court discretion to select among the three available terms, without requiring a finding of aggravating and mitigating circumstances, . . . eliminate[d] the constitutional defect identified in *Cunningham*." (*Sandoval,* at p. 852.) Therefore, Macauley's argument has no merit.

Macauley also contends the trial court violated his Sixth Amendment right to a jury trial by imposing a consecutive sentence for pandering A.H. based on factors not contained or implicit in the jury's verdict. He concedes, however, that the United States Supreme Court's decision in *Oregon v. Ice* (2009) 555 U.S. 160 forecloses that argument. (See *id.* at p. 168 [refusing to extend the *Apprendi* rule to the imposition of consecutive sentences for discrete crimes]; *In re Coley* (2012) 55 Cal.4th 524, 557, fn. 18 [in *Oregon v. Ice* the United States Supreme Court "held the *Apprendi* line of decisions does not apply to factual findings that bear on the question whether multiple sentences are to be imposed consecutively or concurrently"]; *Sanchez v. Hedgpeth* (C.D.Cal. 2010) 706 F.Supp.2d 963, 992-993 [argument that the "imposition of consecutive terms based on facts not found by the jury beyond a reasonable doubt" violates the Sixth Amendment "is foreclosed . . . by the U.S. Supreme Court's . . . opinion in *Oregon v. Ice*"].) We decline Macauley's invitation to "record [our] disagreement with that opinion."

C.      *The Trial Court Did Not Err by Relying on Factors Inherent in the Commission of the Offenses*

"Only a single aggravating factor is required to impose the upper term [citation], and the same is true of the choice to impose a consecutive sentence." (*People v. Osband*

(1996) 13 Cal.4th 622, 728-729; see *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371; *People v. Leon* (2010) 181 Cal.App.4th 452, 469.) Whether imposing the upper term or a consecutive sentence, however, the trial court may not consider as an aggravating factor a fact that is an element of the crime on which the court is imposing punishment. (Rules 4.420(d), 4.425(b)(3); see *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1291-1292; *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.) Macauley argues the trial court violated this rule by imposing the upper term for pimping and a consecutive sentence for pandering A.H. based on reasons that "embraced factors inherent in the commission" of those offenses.

1. *Imposition of the Upper Term for Pimping*

The trial court cited "the vulnerability of the victims" as a reason for imposing the upper term on Macauley's pimping conviction. Under the sentencing rules, a court may consider whether the victim was "particularly vulnerable" as a factor in imposing an upper term. (Rule 4.421(a)(3).) "[A] 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases.'" (*People v. Esquibel* (2008) 166 Cal.App.4th 539, 558.) "'Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act.'" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.)

Macauley concedes that A.H.'s vulnerability was not "a technical 'element'" of his offense, but suggests the trial court erred by relying on A.H.'s vulnerability in imposing the upper term because "victim vulnerability" is inherent in "street prostitution" and therefore is the "functional equivalent[]" of an element of the offense pimping. A.H., however, was more vulnerable than the usual victim of pimping; she was vulnerable to a special degree.

A.H. was 13 years old and had run away from home without any money, without packing a bag, and without any plan, when Macauley found her on a street corner in Long Beach, demanded she get into his car, and then drove her to Los Angeles, where he set her up to work as a prostitute. It is true that the trial court cannot use a victim's youth,

9

without more, as a "particular vulnerability" aggravating factor when, as here, the victim's age is an element of the offense. (See *People v. Quintanilla*, *supra*, 170 Cal.App.4th at p. 413; *People v. Dancer* (1996) 45 Cal.App.4th 1677, 1693-1694, disapproved on another ground in *People v. Hammon* (1997) 15 Cal.4th 1117.) But A.H. was not only young, she was very young, and she was "defenseless, unguarded [and] unprotected" in an unknown location far from home with unknown people and unknown risks. The trial court could reasonably conclude that A.H.'s extremely young age, isolation, and lack of protection, provision, and guidance from a parent or guardian combined to make her particularly vulnerable to Macauley's pimping. (See *People v. DeHoyos*, *supra*, 57 Cal.4th at pp. 154-155 [court's determination that the victim of kidnapping for child molestation was particularly vulnerable did not rest solely on her age where, among other things, the defendant took advantage of the victim's location and isolation]; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 195 [because the victim was not only 81 years old but lived alone, the trial court "could reasonably, and properly, rely on the *combination* of these facts to find that the victim was particularly vulnerable"]; *People v. Dancer*, *supra*, at p. 1694 ["victim's extremely young age together with other circumstances like the time and location of the offense can establish 'particular vulnerability' as an aggravating factor"]; *People v. Robinson* (1992) 11 Cal.App.4th 609, 615 ["a child victim's particular vulnerability can be used in appropriate circumstances even if his or her age is an element of the offense"], disapproved on another ground in *People v. Scott* (1994) 9 Cal.4th 331.) The special or particular vulnerability of Macauley's victim was a sufficient reason for the trial court to impose the upper term.

*People v. Lincoln* (2007) 157 Cal.App.4th 196, on which Macauley relies, is distinguishable. In *Lincoln* this court held that the trial court could not rely on the "inherent high risk" from using a firearm to justify imposing an upper term sentence on a firearm enhancement. (*Id.* at p. 203.) Noting that the trial court did not explain what the "inherent high risk" was and that the sentencing rules did not specify "inherent high risk" as an aggravating factor, this court concluded that "inherent high risk [was] not a proper aggravating factor for the firearm enhancement because, by definition, any victim of an

assault with a firearm or any victim of an offense in which a firearm was used would have been subjected to that *inherent* high risk." (*Ibid.*) By contrast, the sentencing rules provide that a trial court may consider, as the trial court did here, the aggravating circumstance that the victim was particularly vulnerable, i.e., vulnerable beyond the definition for any victim of the offense. (See *People v. Esquibel*, *supra*, 166 Cal.App.4th at p. 558.)

### 2. *Imposition of a Consecutive Sentence for Pandering A.H.*

In addition to noting the vulnerability of the victims, the trial court observed that the sophistication of Macauley's crimes was "definitely great."[7] Again, the sentencing rules specify courts may consider whether "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism" as a factor in imposing a consecutive sentence. (Rule 4.421(a)(8).) This language encompasses "an exceedingly broad range of conduct," and only requires a level of sophistication that, "'when compared to other ways in which such a crime could be committed' [citation], make[s] the crime committed by the defendant 'distinctively worse than the ordinary.'" (*People v. Charron* (1987) 193 Cal.App.3d 981, 994; see *People v. Lincoln*, *supra*, 157 Cal.App.4th at p. 204 ["'[a] fact is aggravating if it makes defendant's conduct distinctively worse than it would otherwise have been'"].)

As the trial court pointed out, Macauley arranged for another, more experienced prostitute to help him monitor A.H. while A.H. flagged down potential customers on the street, he took A.H. shopping for the kind of clothes and accessories he wanted her to wear, and he took photographs of her to sell on the internet. Macauley also had the more

---

[7] The court also noted other circumstances identified by the sentencing rules as aggravating factors, including Macauley's leadership role (see rule 4.421(a)(4)) and escalating criminal history (see rule 4.421(b)(2)). Because, as we discuss, the trial court needed only one factor to justify the upper term on pimping and one factor to justify the consecutive sentence for pandering A.H., we do not address the other aggravating circumstances the trial court identified.

11

experienced prostitute and another woman accompany A.H. during the shopping trip so that A.H. could not "go anywhere," and, before having A.H. begin work as a prostitute, Macauley instructed her on how to determine whether a potential customer was an undercover police officer. The crime of pandering does not require these refinements of method. (See § 266i.) The trial court could reasonably conclude that Macauley's pandering exhibited a sophistication that made the crime "'distinctively worse than the ordinary'" when compared to other ways defendants commit such a crime. (*People v. Charron*, *supra*, 193 Cal.App.3d at p. 994; see *People v. Kurtenbach*, *supra*, 204 Cal.App.4th, at p. 1292 [trial court did not rely on an element of arson because the crime "plainly contains no requirement that the arson be planned in advance or involve sophistication"].) Because the sophistication Macauley employed was sufficient to make his pandering distinctively worse than ordinary pandering, the trial court did not err in concluding Macauley's sophisticated activities were not such "inherent activities of . . . panderers in the business of sex trafficking" that they were the "functional equivalents" of elements of pandering.

D.    *The Trial Court Did Not Prejudicially Err by Relying on the Same Factors To Impose Both the Upper Term for Pimping and a Consecutive Sentence for Pandering*

Noting that the trial court did not clearly distinguish between its reasons for imposing the upper term for pimping and its reasons for imposing a consecutive sentence for pandering A.H., Macauley suggests the trial court relied on the same factors for both, and thereby violated the rule that a trial court cannot rely on the same fact to impose both the upper term and a consecutive sentence. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 350, fn. 12; rule 4.425(b)(1).) As noted, however, the trial court needed only one aggravating factor to impose the upper term and one aggravating factor to impose a consecutive term. (See *People v. Osband*, *supra*, 13 Cal.4th at pp. 728-729.) Because "'"[a] judgment or order of the lower court is *presumed correct*[, and a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent"'"

12

(*People v. Leonard* (2014) 228 Cal.App.4th 465, 478), we presume the trial court relied on A.H.'s particular vulnerability in imposing the upper term for pimping and on the sophistication of the crime in imposing the consecutive sentence for pandering A.H.

In any event, any error was harmless because "the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern no reasonable probability that it would not have done so." (*People v. Osband*, *supra*, 13 Cal.4th at p. 729; see *People v. Coleman* (1989) 48 Cal.3d 112, 166 ["[i]mproper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if '[it] is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error'"].) Here, the trial court could correct any error by clarifying that it relied on the victim's particular vulnerability in imposing the upper term for pimping and on the sophistication of the crime in imposing a consecutive sentence for pandering A.H., and there is no reasonable probability the court would not do so were we to remand again for resentencing.

E. *The Trial Court Must Recalculate Macauley's Presentence Custody Credits and Correct the Abstract of Judgment*

Macauley contends, the People concede, and we agree that the trial court should have calculated Macauley's custody credits at resentencing to include time in custody as of the date of the resentencing, rather than as of the date of his original sentencing on September 11, 2012. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 29 ["when a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody"].) Therefore, we remand the matter to the trial court to award the appropriate credits and to enter a new abstract of judgment reflecting that award.

13

We also agree with Macauley that the abstract of judgment filed on June 5, 2014 incorrectly reflects a conviction on the pimping count as to S.T. (count 1), imposition of the upper term of eight years on that count, and a stayed sentence on the conviction for pimping A.H. (count 2). We direct the trial court to correct the abstract of judgment to eliminate the conviction on count 1 and to reflect the trial court's imposition of the upper term sentence of eight years (not stayed) on count 2. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 188; *People v. Vega* (2015) 236 Cal.App.4th 484, 506 ["'[w]here there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls'"].)

## DISPOSITION

The matter is remanded to the trial court with directions to award the appropriate custody credits and to prepare a new abstract of judgment. The new abstract of judgment should reflect that Macauley was not convicted on count 1 and reflect the imposition of the upper term of eight years on count 2. The trial court is also directed to forward a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.



SEGAL, J.

We concur:



PERLUSS, P. J.



ZELON, J.

14